v. Ariosa Diagnostics, Inc. Mr. Reines, you've reserved of your 15 minutes, 4 minutes for rebuttal. Is that correct? That's correct, Your Honor. All right, you may proceed. Thank you, Your Honor, and may it please the Court. This is a de novo review of a refusal by the District Court to allow arbitration to go forward on contract claims that relate to business harms that are alleged or inflicted by Illumina on Ariosa. And the supply agreement in Provision 31C has an arbitration provision which requires breach of contract claims to be arbitrated. So in the first instance, it would be easy. You're alleged to breach a contract by way of infringement, correct, of a patent? No, there's two breach of contract claims. There's the second claim and the third claim. It's a counterclaim. One of them is for good faith and fair dealing, which relates a series of alleged acts that Illumina took as the supplier that were unfair business harms. The other is a breach of contract, which also alleges the same. It focuses a little more on the assertion of the complaint for infringement as being the basis for the breach. So you are asserting infringement? Oh, yes. We do have an infringement claim, yes. They have a license, right? Their argument is we have a license, and we have a license as a complete defense to infringement. And their argument is that any issues concerning the license, therefore, are connected to the infringement. And that's why it's related to patents, to a patent issue, and that's why it's not arbitrable, right? That's mostly it with two qualifiers that I think need to be considered to have a full picture. But that's the general gist. That's the high level. There's two pieces, though, that are important pieces to that that can't be ignored. One is that the claim for breach is not dependent on the infringement claim. So there's IPRs right now, and for example, if unfortunately and inconsistent with the facts, our patent was invalidated, their claim for breach would go forward because their claim for breach is based on the historical fact that we sued for infringement. So when you look at the relationship between the infringement claim and the breach claims... There's a relationship. Sure, they have a license, and the license protects them from any claim of infringement. So if you sued them for infringement, you violated the license. We're talking about the quality of the relationship, and you're right insofar as you state that. But it's also true that if we lost on infringement just on technical grounds, or our patent was invalidated, or we dropped the claim, their breach of contract claim would go forward. And under this agreement, that should be arbitrated because that stands alone, and that's the primary arbitration clause. But there's a second point, which isn't to be neglected. At a minimum, under their good faith... What we're dealing with is Section 31C, right? Yes, Your Honor. 31C says, no arbitration shall resolve disputes relating to the issues of scope, infringement, validity, and or enforceability of any intellectual property rights. So clearly, the license is related to the issue of enforceability of your patent rights, because if there's a valid license... So they haven't invoked the enforceability... And that affects the enforceability. But the point is just to finish up, because I think this is... I appreciate there's some collateral issues in the breach of duty of good faith and whatnot, some of that that is sort of seems like it's a little distant from infringement, but it's still connected to the existence of the license. Yes, you're just saying connected to, and let me address the connected to in a minute. But the point I really want to get to before we move to the connected to is under their good faith... Relating directly or indirectly? Typically, relating means relating directly or indirectly? I don't think so, because it's a carve out from a broad arbitration provision and with all the principles... Right, but do you have a case that says that relating doesn't generally mean specific relating as opposed to indirectly? No, just arbitration exceptions are construed narrowly. That's the case I have. I appreciate it as a principle that you're supposed to favor arbitration when you can. Your Honor, there is a factor that I think will be important to you that I just want to explain about the nature of the good faith and fair dealing claim. It is about unfairness under the contract. It is not by any means all focused on the patent infringement claim. That is the major one because it's also in the breach of contract claim and it's also in the license defense. I understand why the court thinks that's the gist of this to some extent, but there's an argument that they have that's set forth in their counters claim. It's clearly there at JA 247 where the allegation is that when we gave notice of breach, they call it pretextual notice of breach because they were not in their field of use because their test involved gender, male or female, in terms of the fetus. That that was a pretextual allegation of breach that was unfairness and was a breach of the good faith and fair dealing. If this case went over to arbitration, nothing in the arbitration would prevent you from saying, guess what? There's no license here. There was a failure of consideration and there's no license. Nothing would stop your side from mounting that argument. That would respond to their argument that I just expressed. That's what I'm trying to get at, Mr. Warren. What I'm saying is that if this case were set over to arbitration, then the question of whether or not there was in fact a defense to infringement, i.e. did a license exist, would be adjudicated over in that other case as opposed to adjudicated in the heart of the infringement case. That would be one of the issues. There would be other issues which would have nothing to do with the infringement claim. Doesn't that tell us that the relationship between the contract issue and the infringement issue is really tight? No. Why not? First of all, that assumes we're ignoring the fact that there's aspects of their breach claim. You can totally eliminate their defense to infringement in the arbitration. You can neuter entirely their defense. Let's assume hypothetically they say, yes, it would be infringement, but for the license. They would like to keep the determination of whether there's a license of L-non plus collateral issues surrounding that issue in the patent case because they've got a contract that says if you've got an issue that's related to infringement, you don't arbitrate it. As long as we understand that part of their breach claim has nothing to do with patent infringement, and we all agree to that, it has nothing to do with license and nothing to do with patent infringement, I'm ready to move it. Well, there may be a piece of that. I'm not sure. That's at paragraph 68 and 69 about the pretextual breach notice we gave concerning the customer field of use. So it definitely exists. I think the way, Your Honor, just the mode of thought you have there is upside down, and I'm ready to go with that. I want to make sure we can't leave this hearing not understanding there's a piece of their breach claim which has nothing to do with license or infringement, and I just identified it at 68 and 69. See, I think the district court judge was agreeing with me and disagreeing with you, and I'm reading in her opinion that this is on the second time around, not the appeal that was after before. At JA6, page 6 of her opinion is from lines 14 to 18. Illumina argues there are counterclaims solely by looking at the terms of supply agreement. The fact that the dispute can be resolved in an examination agreement doesn't change the fact that the dispute is related to the determination of infringement? Yes. If you're envisioning this as an affirmance, then you would agree with the district court judge, and I disagree. I'm an appellate. So in that sense, that's so. But let me state this. I think your analytical framework is upside down. The way you're looking at it. Absolutely. And let me explain why. First of all, I think there's the independent ground to reject this argument because there's aspects of the breach claim which have nothing to do with infringement or license. But holding that aside, and that's been argued by us below and here, and I can give side to that, and I'll do that as needed. But on your train of thought, you're saying, well, there might be something in arbitration that's relevant later on to the litigation, so we can't let the arbitration intrude. It's not relevant to it. It would take away from it. You have a patent infringement suit going against Ariosa. Ariosa says we have only one thing to say in respect to that suit. We only have one defense. Only one. No claim construction arguments. Nothing. We have one defense. We have a license. I mean, that's hypothetical. You can look at their case that way. No, because they have a declaratory judgment. I understand that, but they don't need anything else. If they have a license. It would be a defense. Now, let me just address the reasons why I think that's wrong. If they were smart and they wanted to save money on counsel fees, it would be the very first issue they would want litigated. Do we or do we not have a license that covers this stuff? Because if we do, it's over. No, I mean, the case in chief is not the affirmative defense. The affirmative defense would go second, so I disagree with that. I understand that, but just in a practical point of view of where your dollars go in litigation, if you've got a defense that's kind of totally like a 101 argument, you want to do it up front and get it over with. What I'm saying is in this hypothetical, the first thing they would like to do in litigation, you're taking away from them and putting it over in arbitration, even though it is their complete defense to charge of infringement. So you've heard what I have to say. Okay. I'm sorry I'm using up too much time. No, that's okay. I mean, you're important to this, but I do want to address the mode of thought, which is we need to protect the right to litigate, and we can't have things, even if they fall within arbitration, that encroach on that, and I think that's backwards. Given all the rules about the importance of arbitration and the fact that breach of contract is arbitrable. Now, in the text, I think the fact that the exception is carved out is limited to issues, as compared to claims, shows how narrow it is. Claims is a broad concept. Issues is a very narrow concept. When I think it says issues of infringement are carved out, okay, I think that's saying we don't want people to do these particular issues. It's not at the claim level, which is very unusual in my experience. The disputes relating to issues of infringement mean like an infringement claim, you couldn't just have disputes for infringement. What are you referring to? Are you referring to the bottom of subprogress C? Yeah. The very last sentence? Yes, Your Honor. Okay. And it says disputes relating to issues of scope of infringement and scope infringement. Scope is like a sub-issue, right? I mean, that's not a claim. What about issues, okay, of enforceability? That's not argued by them. That wasn't addressed by the district court. I assume that to me would be inequitable. You told me it's de novo review, Mr. Werenis, and I'm reading a contract, and typically we have de novo review of what contracts say. I'm just saying the appellee isn't arguing this. Well, fine, but subject your interest. Well, I'm noting that it's a threshold matter, and now I'm happy to address it on its substance. I take that infringement validity and or enforceability. Maybe I'm wearing my patent geek hat as meaning inequitable conduct and the typical unenforceability. Those are the three categories of patent is infringement validity and unenforceability. It's not limited in that fashion at all, though. No. No. But I don't think that – I think there's good – I think, you know, Mr. Gindler and his team would agree. Do you think that defense to infringement is not an issue relating to infringement? I think that when it says relating to – That's where your case hinges on that? I think relating – well, my case hinges on the fact that they've got contract claims that have nothing to do with license or infringement. So one would think at the first impression that I would win because their motion of good faith and fair dealing is that we made an allegation of breach, which they call in the counterclaim pretextual breach. Maybe if you had a contract claim, you're trying to establish a pure contract claim. But that's not an issue here because everything here involves IP rights. Even your pure contract claim, you know, where you're maybe disputing terms or money. It's not a patent issue in this case? I mean, yes, in some general sense, everything relates to intellectual property. I mean, what this all goes to, at least for me from a common sense perspective, is license is so obvious. It's so obviously a defense. It's so obviously the subject of this agreement. As you say, the supply agreement, it's all about intellectual property. If they wanted license to be carved out of the broad arbitration agreement, they would have said it. It would have been that simple. In the case of this pretextual breach regarding the field of use, there's no patent that's been identified by anybody that would be infringed. It's a breach claim. They said you breached your good faith covenant of fair dealing because you alleged that we breached the field of use. No one said anything about patents. You can look up and down, and I don't know what Mr. Gindler is going to say, but he's not going to have an answer for you if you look at the actual counterclaim and what's there. And so that's what I'm basing my argument on. But moving to the piece where they do say you knew what our product was, so you must have licensed us to everything because that's the gist of it, is you knew that you did. So whether it's express, implied, or anything else, you couldn't license us to use your equipment and then sue us for it as a business harm argument. Let me ask you this question. You're into your rebuttal time, or you've used up all your rebuttal time, but don't all these claims rise and fall as to the issue of whether there's a license or not? They don't. They don't. And I've been ineffectual in conveying that, and I apologize for that. Okay. In their counterclaim, their third counterclaim relating to good faith and fair dealing, and there's pages of explanation before that. At 239, it starts notice of breach. They have pages, five, seven paragraphs on that question. And then in the counterclaim itself, they refer to this at 247, in paragraphs 76 and 78. The customer field of use is defined, and then at line 13 and 14, breach the government in good faith and fair dealing by asserting protectual claims of breach of the agreement. Not you sued, breach of the agreement, which relates to this customer field of use in paragraph 76. These are right under third counterclaim. It's unmistakable. There's no good response. So at least part of it is based on something that has nothing to do with license or patent. Okay. It would be easier if that wasn't true. Let's hear from the other side. Thank you. Councillor Gindler. Good morning. In the district court, Illumina took a different position, and this position is pointed out in the district court's order. This is on page JA0005, starting at line 21. And the district court quotes from Illumina's reply brief, its original reply brief on the motion to dismiss. And there, Illumina said, quote, in a nutshell Ariosa's breach counterclaims boiled down to the contention that section 4A of the supply agreement grants Ariosa a license, either expressed or implied, to every single patent Illumina owns. Ariosa thus contends that Illumina breached the supply agreement by merely suing Ariosa for patent infringement. That is exactly how Illumina characterized our complaint, because that's exactly what the complaint alleges. We have a license to the Illumina portfolio that falls into two buckets. One is defined as core IP and goods, and one is called secondary IP rights and goods. Secondary IP rights are carved out except for a representation, a very important representation that they made in the supply agreement, which is they were not aware of any secondary IP rights and goods that they owned that we needed to license as of the date of the supply agreement. The 794 patent had been around for eight months as of the date of that before we got sued. What changed, of course, was that Illumina, instead of being our supplier, became our competitor when they bought Veronata, and everything changed. Now, it is true there is more alleged in our contract counterclaims, because in addition to showing breach, we also have to show damages, and we have to show causation. So there is more that's in there to link the breach to the damage that we're going to show. That's how we have to prove damages, because we do believe we were harmed, and this is a case that involves business harms, but at its core, Ariosa will establish a breach of contract claim by showing its license defense works. They are equivalent in showing the breach. If someone else protected you from being sued, they sued you, they breached the license, then you have collateral issues of damages. That's correct, and that's the only collateral issue. It's an important issue. We have to show damage, and we have to show causation, but at its core, the breach counterclaim is about you sued us when you gave us a license. And if we move the dispute, Mr. Reines makes an argument here that he made when he came up the first time in his reply brief up here, because he went back for jurisdictional reasons, which is that we can sever. We can somehow sever a piece of this off and send it to arbitration. Do you understand that argument? I do understand the argument. I don't think it's right. I don't think it's right for at least two reasons. One is contractual. But what do you understand him to propose to leave behind in the district court? Here's what I think I understand it to mean. I think what he would say is that the license defense, which is equivalent, at least according to Illumina District Court, which would also establish breach, but the license defense, we have a license, gets litigated in the district court, but then the other issues, which essentially would be causation and damages, would get litigated in arbitration. This is why I asked Mr. Reines whether if the case went over to arbitration, wouldn't he be able, if he wanted to, to mount an argument that there had never been a license? If the entire matter was, as Illumina has asked, sent to arbitration, and, for example, if Illumina won that arbitration, he would have the ability to argue in district court they've already lost that issue. They don't have a license defense anymore. That's what I was trying to get at. I didn't make it explicit to him that I was concerned about his severance argument. Well, I'm concerned about it for that reason, too, because if you sever the entire part, well, then one of our principal defenses to patent litigation has just really been taken into a different form and gets litigated before an arbitrator instead of before the district court, when the essence of patent infringement is taking actions, quote, without authority, which is in 35 U.S.C. 271. It's our right to be able to show that we, in fact, acted with authority because we got these rights from Illumina when we agreed to buy equipment exclusively from Illumina and consumables exclusively from Illumina. That's why we entered into this agreement. We had to have protection in doing that, that in using the very equipment and consumables that we were buying from Illumina, we weren't going to get sued for infringement for using those within our field of use. And in fact, that's exactly what's happened. They've sued us because we became a competitor to them when they bought Veronata. At the end of the day, the case doesn't really turn on whether you look at relating to in a broad way or a narrow way, because I don't think there is any way of reading relating to to eliminate the fact that a license is a defense to a patent infringement case. And under any reading of relating to, it relates. In fact, it relates directly. It was not a difficult analysis for the district courts. And in fact, as I pointed out when I first began to speak, it is the essence of our contract counterclaims. Now, counsel for Illumina points out that the breach of the implied covenant claim involves a little more. And I don't dispute that. It does involve a little more. Essentially, while the requirements are a little fuzzy, essentially, a breach of the implied covenant also involves showing that you were deprived of the benefit of the bargain, and in fact, in a calculated way. And so we do have additional facts to show that we were in fact being deprived in a calculated way of the benefit of the bargain. But that still comes right back to the essence of the case. That's because you argue as a direct and proximate result of... That's correct. The essence of the case is we cannot win either claim... I'm sorry, assert. I said argue, but actually you asserted. We cannot win either of our contract counterclaims without showing that we have a license. We show we have a license, then we have shown breach. That is how we win both cases, both of our breach-of-contract counterclaims. I don't think you can engage... Do you want to get back to Judge Clevenger's question, which I'm not sure that I answered, which is if there's a way of sort of carving up the breach-of-contract counterclaims and having some of it in arbitration... Well, I mean, in all fairness, I mean, Mr. Reynolds has case law that says, you know, where you can, where issues are severable. I mean, you can't forget that there's a principle at hovering omnipresence here, which is whether you probably don't like it in this case, which is you keep the thumb on the scale in favor of arbitrability. And once the parties say we have a contract, we want to arbitrate our disputes. Mr. Reynolds has that going for him, that principle. And what he's trying to say is, well, if there's some aspect, let's assume that there was a, thrown into your lawsuit, oh, a tort claim of some sort, that, you know, that you, they claimed that you'd committed some type of a tort or vice versa. You could pull that out and send it to arbitration. So if there were claims which were not subject to the exception, well, sure. But there aren't claims that aren't subject to the exception. In other words, he has case law that says if you have, let's say, three causes of action in a... Well, that's what I asked about directly or indirectly. It seemed to me that, and that's what Judge Reynolds was saying, something that's, pardon me, Judge Wallen's direct and proximate result of suggests that indirect relationship is what we're talking about here. What I think Mr. Reynolds is saying is some of these issues you're talking about he believes are so collateral to the infringement defense that they can be carved up and sent over to arbitration. And what I'm saying is I think the only things that fall into that category are causation and damages. I don't see how you could carve those out because how do you connect the damages to the breach? I could carve them out because if he can get those issues back, he can say, well, there's no causation and there's no damages because there was no contract. It creates... He can get an arbitrator to say, well, there was a failure of consideration or something and so there was no contract at all. You're correct. You could have an arbitrator reaching... I think that's the trap that, that's the scenario that's most beneficial to his client. It's another reason why I think that it makes no sense to sever it for the practical reason, which is the arbitrator can do pretty much anything he or she wants to do. And it's basically very difficult, as the court would know, to get an arbitration award reversed. The standard of review is quite stringent. So for that reason, I think it makes no sense to try to either send the whole part there, a whole thing there, or even part of it there because you're right. The arbitrator could decide, well, you know what? I don't have to reach this complicated question of causation because I'm just going to find there's no agreement. And which is going to get done first? Well, probably the arbitration because arbitrations happen a lot faster than do district court litigation typically. And in fact, right now, this case has stayed pending the resolution of several appeals and IPRs. So this isn't a theoretical risk. This is a real possibility. I wanted to just very briefly address what I'll call the standard here, which is there's a lot of disagreement in the parties about what the rule of law is here. And it should be pretty clear because the Supreme Court has spoken very definitively in 2010 in the Granite Rock case and tried to bring some order and clarity to what presumption of arbitrability actually means and when it applies because there was some confusion in the district court among the circuits after the AT&T case. And Granite Rock made very clear two very important principles about the presumption. The first is that the presumption applies only when you have an arbitration agreement which is ambiguous about whether it covers the dispute at hand. If that is true, then the presumption applies. And then it goes on to say that you adhere to the presumption and ordering arbitration only where the presumption is not rebutted. There is not some general presumption in favor of arbitration which is used to interpret contracts. Contracts for arbitration have simply the same standing as every other kind of contract. In Granite Rock, the court made clear that a first principle of arbitration is the following. Arbitration is strictly a matter of consent and thus a way to resolve those disputes but only those disputes that the parties have agreed to submit to arbitration. That's a Granite Rock decision. I know that Mr. Marinas disagrees with that. That's why he says he believes there's ambiguity in the contract. Well, he also disagrees with the standard because what he would say is that once there is some ambiguity, if he says there's any ambiguity whatsoever, then we're done with the discussion and the case goes to arbitration. And first, it is true that the presumption applies if there is ambiguity but he's skipping the second step which is you first have to ask yourself, okay, I acknowledge there may be some ambiguity here but can I resolve it? Can I answer the question, what does the contract provide for? And here, I think it is clear that even if relating to is a broad term which you can look at narrowly or broadly depending upon the context, under any analysis of that term, this is a case where our license defense to a patent infringement case relates to an issue of patent infringement and it also relates to a question of scope. And so the presumption is rebutted because the agreement here clearly applies. Thank you. Thank you. Mr. Reines, I'll restore your time to three minutes. Thank you, John. I appreciate it. Two points I'd like to make. First, on the textual argument regarding the interpretation of the exception. To apply it the way we've been discussing about it today is to ignore the distinction between referring to the claim level and the issue level. If we're talking about the issue of infringement or scope, scope is such a subtopic. If any validity claim is relevant to infringement, any infringement claim is relevant to invalidity, why do they have these specific sub-issues? They didn't want these little issues to be little, but these sub-issues to be addressed. Relating to means discovery issues or if you have an infringement claim, the damages that follow. So there is an ambient around these issues which is carved out, but I don't think it leaps over to things like license which were so foreseeable that they're not even included. What about the language? You're speaking about relating to. Then it gets down to this last sentence we talked about. It says Section 31C should not apply to. Then it says, and no arbitration shall resolve disputes that are relating to. So it's more than just bringing in issues. It's talking about resolving any disputes relating, and it goes on to enforceability of any IP right. That seems to me to be a pretty big basket there with respect to disputes involving any IP right, and that's what this whole matter is about. There's clearly a debatable issue there. The point I'm making is that using the term issue as compared to claim, which would be the normal language, a claim would be so much broader. In other words, the way that that reading, anything relating to a claim of infringement, I guarantee you Judge Cleveridge would think that sweeps in anything about licensing. So you're basically ignoring the distinction between claim and issue, to my mind, and the fact that this is an exception. Yes, I understand that's one way to look at it. I'm saying the way I'm arguing to you is a legitimate way to look at this. It's legitimate to say when we draw the circle around infringement, we're not going to draw it to include all affirmative defenses because that's what the rationale that I've been hearing today would do. We're going to look at it just to say what do we need to do to actually adjudicate infringement itself? And let's say we need to have something related to that because otherwise the different language would be used. You wouldn't just simply say include all claims, but you would look at the claim that's being asserted and say does it involve an IP right? I don't think so. I think you'd say does it involve the resolution of an infringement question? Does it resolve the resolution of validity question? Enforcement. An enforcement question. We're bringing that here today. That's never been argued that that was the assertion of the complaint. I just think once you take it that way, if this all becomes so broad and it sweeps in license, they would have included license if they wanted to include license. That's a legitimate point. I'm just saying it's a debatable issue in which we know how that ends up. That ends up for arbitration. The only other point I want to make, you've been very generous with time today, is the suggestion that we didn't make the point that there's this whole other breach theory they have and it's beginning to end. It doesn't at any point in the process require consideration of patent or license issues that have been presented in any way. We made this pretextual note breach notice because they weren't within their field of use because they were selling this gender. We made this exact argument. The statement was made, we didn't make it in the district court at JA 262. We excerpt paragraph 78 of the amendment claim that has the exact pretextual notice argument and we say these harms arise out of the supply agreement and they do not involve issues of scope, invalidity, enforceability, or infringement. Yes, the gist of what the argument's been about has been about this licensing piece. That doesn't mean there's not the other piece. Thank you very much. Thank you, Mr. Wright. Thank you. That concludes our argument for today. Court is adjourned until recess. All rise.